IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

RICKY N. ALEXANDER,

                        Plaintiff,

    v.
                                                            OPINION & ORDER

LIEUTENANT R. RASMUSSEN,                                     14-cv-849-jdp
LIEUTENANT D. STRELOW, and
WARDEN JAMES R. SCHWOCHERT,

                        Defendants.

---

Pro se plaintiff Ricky Alexander, a state prisoner now incarcerated at the Wisconsin Secure Program Facility, is proceeding on Fourteenth Amendment equal protection claims against officials at his prior prison, Dodge Correctional Institution (DCI). Dkt. 36. While at DCI, Alexander, who is African-American, had a physical altercation with a white inmate. Alexander contends that defendants discriminated against him based on his race by punishing him but not the white inmate.

Four motions are pending before the court: (1) defendants' motion for summary judgment for Alexander's failure to exhaust administrative remedies, Dkt. 44; (2) Alexander's motion to compel discovery, Dkt. 52; (3) Alexander's motion for expungement, Dkt. 60; and (4) defendants' motion to take a deposition, Dkt. 62. I will grant the first motion and deny the rest as moot. The undisputed facts show that Alexander failed to file a timely inmate grievance concerning his discipline after the fight.

UNDISPUTED FACTS

The following facts are undisputed unless otherwise noted.

In February 2013, Alexander had a physical altercation with Benjamin Kamedulski. Each inmate accused the other of being the initial aggressor. Alexander maintained that he acted in self-defense, but defendant Strelow investigated and determined that it was more likely than not that Alexander had battered Kamedulski.

In March 2013, defendant Rasmussen held a disciplinary hearing and found that Alexander had violated the prison rules. Rasmussen sentenced Alexander to 240 days in restrictive housing, Alexander appealed the disciplinary decision, and defendant Schwochert denied the appeal on April 16, 2013.

Between May 2013 and October 2014, Alexander filed five inmate grievances challenging the disciplinary process. The first four of these grievances did not raise the issue of racial bias. The fifth grievance did raise the issue of racial bias, alleging that Alexander's punishment was "motivated by racial animosity" because Kamedulski was not punished. But the fifth grievance was filed in October 2014, Dkt. 51, ¶ 18, and it was rejected as untimely.

ANALYSIS

A.  Failure to exhaust

Under the Prison Litigation Reform Act, a prisoner must exhaust available administrative remedies before suing in court. 42 U.S.C. § 1997e(a). To satisfy the exhaustion requirement, a prisoner must "properly take each step within the administrative process," which includes filing grievances and appeals "in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024, 1025 (7th

Cir. 2002). In Wisconsin, the Wisconsin Administrative Code requires an inmate to file a complaint "14 calendar days after the occurrence giving rise to the complaint." Wis. Admin. Code DOC § 310.09(6). The exhaustion requirement is mandatory, *Woodford v. Ngo*, 548 U.S. 81, 85 (2006), and failure to exhaust requires dismissal of the prisoner's case. *Perez v. Wisconsin Dept. of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999).

Defendants move for summary judgment, contending that Alexander did not timely file an inmate grievance within the 14-day deadline. As movants for summary judgment, defendants must show that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The exhaustion requirement "is an affirmative defense that a defendant has the burden of proving." *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015).

Defendants have carried their initial burden. They provide an Inmate Complaint History Report and the declaration of Cindy O'Donnell, who makes final agency decisions on inmate grievances filed through the Inmate Complaint Review System (ICRS). These materials establish a prima facie case that the grievance procedure was available to Alexander: they show that Alexander used the ICRS to file numerous grievances about a wide variety of matters, ranging from missing potato chips to the constitutionality of showering with his cellmate. Dkt. 47, ¶¶ 10-11 and Dkt. 47-1, at 1-2. Alexander did not file an inmate grievance on the issue of racial bias within the 14-day limit: the first time that Alexander raised the issue was on October 11, 2014, Dkt. 47-6, at 7-8, well after the disciplinary hearing on March 26, 2013, Dkt. 51, ¶ 10. Because defendants have carried their initial burden, the burden shifts to Alexander to show that, by adducing admissible evidence, a genuine dispute of a material fact exists. *See Obriecht v. Raemisch*, 517 F.3d 489, 493 (7th Cir. 2008).

Alexander's concedes that his inmate complaint filed in October 2014 is untimely. He argues only that his failure to file a timely grievance should be excused. Alexander offers two alternative reasons.

First, Alexander states that he was "only told by the disciplinary committee he can appeal the disciplinary decision to the warden, nothing about he must file an inmate complaint." Dkt. 48, at 1. According to Alexander, "At no time were [he] made aware or informed he has to file a[n] inmate complaint, had [he] been told this valuable information, he would have filed a complaint the same time the appeal was filed." *Id*. at 3. I take Alexander to mean that either he was not informed about the grievance procedure or he was misled by the disciplinary committee. If his argument is that he was not aware of the grievance procedure, he cannot raise a genuine factual dispute: he had already filed at least three grievances before the March 26, 2013 disciplinary hearing, and one of them challenged a disciplinary decision against him from 2011. Dkt. 47-1, at 1. So there is no dispute that he was aware of the grievance procedure because he already used the grievance procedure to challenge a disciplinary action.

If his position is that the disciplinary committee actively misled him, that argument fails for lack of evidentiary support. When a prison official invites noncompliance by misleading a prisoner about how to invoke the administrative procedure, the prisoner is not required to follow the procedure. *See Swisher v. Porter County Sheriff's Dept.*, 769 F.3d 553, 555 (7th Cir. 2014) (holding that exhaustion of administrative remedies was not required when the prisoner was "told not to file a grievance because the officers understand [his] problem"). But here, Alexander was not misled: the committee told him about his right to appeal, but there is no evidence that the committee told him that he did not need to file a grievance. And

4

given his familiarity with the grievance procedure, it is difficult to see how he could have been confused about the grievance process. And, even if he were, Alexander did not raise the issue of racial bias on appeal.

Alexander's second reason that his failure to file a timely grievance should be excused is that he did not know about the racial bias until October 2014. According to Alexander, he only learned that Kamedulski had not been punished by talking to other inmates, and when he learned this fact, he "immediately filed a[n] inmate complaint" about the racial bias. Dkt. 48, at 3. If he lacked the knowledge about the racial bias, it could have made it impossible for him to file a grievance on time. Circumstances rendering the exhaustion impossible could excuse failure to exhaust. *See White v. Bukowski*, 800 F.3d 392, 396-97 (7th Cir. 2015); *Hurst v. Hantke*, 634 F.3d 409, 412 (7th Cir. 2011).

But Alexander's statement that he learned about the disparate treatment in October 2014 is not supported by any admissible evidence, not even his own affidavit or declaration. In his response to defendants' proposed findings of fact, Alexander cites "Ricky Alexander affidavit 11/02/2016" for the proposition that he did not know that Kamedulski was not punished. Dkt. 51, ¶ 15. But he has not filed an affidavit dated November 2, 2016, so I have no way of knowing what that affidavit says or whether it actually exists. Alexander's unsupported assertion that he did not know about the racial bias fails to raise a genuine dispute about a material issue of fact. Without evidence to support his position, he provides no basis for me to deny defendants' well-supported motion. *See Hurst*, 634 F.3d at 412; *Bell v. Reusch*, 326 F. App'x 391, 393 (7th Cir. 2009).

I will not extend the deadline for his summary judgment response to allow him to file the missing affidavit. He already had an opportunity to do so: defendants have alerted

Alexander to the missing affidavit in their reply brief. Dkt. 50, at 3-4. Alexander ignored this warning and did not file his affidavit, even though he has filed declarations on other subjects in support of his motion for discovery. Dkt. 56 and Dkt. 59. Accordingly, because Alexander has failed to adduce admissible evidence to raise a genuine dispute whether he was unaware of the alleged racial bias before October 2014, I will grant defendants' motion for summary judgment and dismiss the action.

**B. Other motions**

Because I will dismiss the action for Alexander's failure to exhaust available administrative remedies, I will deny the remaining motions as moot.

## ORDER

IT IS ORDERED that:

1. The motion for summary judgment by Defendants Lieutenant R. Rasmussen, Lieutenant D. Strelow, and Warden James R. Schwochert, Dkt. 44, is GRANTED.

2. All other pending motions, Dkt. 52, Dkt. 60, Dkt. 62, are DENIED as moot.

3.  The clerk of court is directed to enter judgment in favor of defendants and close the case.

Entered March 13, 2017.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge